02-10-078-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00078-CR

 

 


 
 
 Phillip Ramirez
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

FROM Criminal District Court No. 3
OF Tarrant COUNTY

------------

MEMORANDUM OPINION[1]

----------

          A jury convicted Appellant Phillip
Ramirez of unlawful possession of a firearm by a felon and assessed his
punishment at twelve years’ confinement and a $4,000 fine.  The trial court sentenced him accordingly.  In his sole issue, Appellant challenges the sufficiency
of the evidence to support his conviction. 
Because we hold that the evidence is sufficient, we affirm the trial
court’s judgment.

          Section 46.04 of the penal code
provides that 

(a) A person who has
been convicted of a felony commits an offense if he possesses a firearm:

 

(1) after conviction
and before the fifth anniversary of the person’s release from confinement
following conviction of the felony or the person’s release from supervision
under community supervision, parole, or mandatory supervision, whichever date
is later; or

 

(2) after the period described by Subdivision (1), at any
location other than the premises at which the person lives.[2]

 

Appellant
stipulated to the prior felony conviction and does not challenge that element
of the State’s proof.  He challenges only
the sufficiency of the evidence to show that he possessed a firearm.

After
the parties briefed this case on appeal, the Texas Court of Criminal Appeals
held “that there is no meaningful distinction between a Clewis
factual-sufficiency standard and a Jackson v. Virginia legal-sufficiency
standard” and that

the Jackson v.
Virginia standard is the only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.  All other cases to the contrary,
including Clewis, are overruled.[3]

 

          Accordingly, we apply the Jackson
standard of review to Appellant’s sufficiency complaint.  In our due-process review of the
sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the prosecution to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.[4]  The standard of review is the same for direct
and circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.[5]

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.[6]  The trier of fact is the sole judge of the
weight and credibility of the evidence.[7]  Thus, when performing an evidentiary
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.[8]  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@[9]  We must presume that the factfinder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.[10]  An appellate court must not
act as a thirteenth juror.[11]

Appellant’s
girlfriend, Jessica Nunez, testified that some people came by the house she
shared with Appellant and made threatening statements, including telling
someone to “shoot him.”  Appellant ran from
the house in an attempt to get away from the people who were threatening
him.  Jessica denied that Appellant had a
firearm on his person when he left the house. 
A short time after he fled, Appellant called Jessica and asked her to
pick him up or have someone else pick him up at the Sonic Drive-in.  Eduardo Gorostita, a friend of Appellant’s
who saw part of the chase, also testified. 
He testified that he knew Appellant and knew that Appellant did not own
a gun.  Eduardo also testified that two
of the men who were chasing Appellant left Appellant’s house in a dark,
four-door vehicle, with both men sitting in the front, and a third person chased
Appellant on foot.

          Paul Nunez, Jessica’s brother, testified
that he received a phone call and went to Jessica’s house.  She asked him to meet Appellant at the Sonic
Drive-in.  Paul testified that he sat in
the passenger seat, his uncle drove, and Paul’s grandmother sat in the back
seat.  About ten seconds after they
turned onto Berry Street, the street that would take them to the Sonic
Drive-in, Paul noticed a car following them. 
When the car in which Paul was riding pulled into the Sonic Drive-in
parking lot, he saw Appellant behind some benches.  Paul’s uncle pulled into one of the parking slots
where customers place orders, and Appellant came up to the car and opened the
car door.  Suddenly the police shined
lights on them and told Appellant to get on the ground.  Paul testified that as soon as the officers
saw Appellant, they put him on the ground, handcuffed him, and then placed him
in their unmarked police car.

          After Appellant complied with the
police’s request to get on the ground, the police ordered Paul and his uncle to
get out of the car.  The officers
searched them, put them in handcuffs, and ordered Paul’s grandmother to sit on
the sidewalk.

Paul
testified that Appellant had been waiting for the family to pick him up at the
Sonic and that at no time did Appellant throw anything into the bushes or hide
anything in the bushes.  Paul also testified
that Appellant was never close to the bushes at all, which Paul claimed were
perhaps ten feet away from Appellant when Paul saw him at the Sonic Drive-in.  Paul additionally testified that he had neither
seen nor been with Appellant at any time before they saw each other at the
Sonic Drive-in.  Paul testified that he
had no idea what Appellant carried or had on his person that night.

          Fort Worth Police Officers Robert
Costa and Travis Eddleman, on the other hand, testified that while they were on
patrol at approximately 1:00 a.m., they happened to see Appellant
walking through the parking lot of the Sonic Drive-in, which was closed for the
night.  Costa testified that he saw
Appellant standing by a landscaped courtyard area containing mulch, shrubs, and
bushes.  When Appellant saw Costa,
Appellant leaned down behind one of the bushes and put something on the
ground.  Costa and Eddleman exited their
unmarked car, and Costa instructed Appellant to lie down.  While Eddleman stood by Appellant, Costa went
over to the bushes and found a .357 revolver. 
Costa testified that while the landscaped area was “saturated with
water,” the revolver “was bone dry.”

          Costa testified that he looked to see
if he could see fingerprints but saw none.  He picked up the revolver “by its rubber grips,”
handed it to Eddleman, and then placed Appellant under arrest.

          On cross-examination, Costa testified
that he had not seen the revolver in Appellant’s hand.  He also testified that he is not an expert in
fingerprints and that he did not request crime scene officers to process the
scene.

          Eddleman testified that he had special
fingerprint training that allowed him to determine
whether fingerprints were identifiable by merely looking at them, apparently using
no powder or other agent.  He testified
that because of his special training, he was able to determine that “there were
no prints that were identifiable” on the rubber handle of the firearm.  He further testified that he did not see
Appellant carrying a firearm.

          The State’s theory is that the
officers saw Appellant place something behind the
bushes at the closed Sonic Drive-in and that when they collected it, they
discovered that the object was a firearm. 
Although there is
evidence that Appellant did not possess a firearm, and although the officers
testified that they never actually saw Appellant in possession of the firearm,
the circumstantial evidence, based on the testimony of the officers, is that
Appellant must have possessed the firearm because he placed it behind the
bushes.

          Applying the appropriate standard of
review, we hold that there is sufficient evidence that, if believed, supports
the jury’s verdict.  We, therefore, defer
to the jury’s resolution of the conflicts in the evidence, overrule Appellant’s
sole issue, and affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 24, 2011











[1]See Tex. R. App. P. 47.4.





[2]Tex. Penal Code Ann. §
46.04(a) (Vernon 2003).





[3]Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).





[4]Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).





[5]Clayton, 235 S.W.3d at 778; Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007).





[6]Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.





[7]See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).





[8]Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).





[9]Hooper, 214 S.W.3d at 16–17.





[10]Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.





[11]See Isassi v. State, No. PD-1347-09, 2010 WL 3894792, at *3 (Tex. Crim. App. Oct. 6, 2010).